IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| GROVER GAMING, INC., ) | |
| ) | |
| Plaintiff, ) | Case No. 7:23-cv-321 |
| ) | |
| v. ) | By:   Michael F. Urbanski |
| ) | Chief United States District Judge |
| RODGER HUFFMAN, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This matter comes before the court on defendant Rodger Huffman's Motion to Dismiss the defamation and tortious interference with a business expectancy claims against him. ECF No. 10. For the following reasons, Huffman's motion is **DENIED** as to both counts.

### I.  Factual Background

Grover Gaming, Inc. ("Grover") is a provider of electronic pull tabs for the regulated charitable gaming market and claims to have a stellar reputation in the field. Compl., ECF No. 1, at ¶ 2. Grover is licensed to manufacture and supply these games by the Virginia Department of Agriculture and Consumer Services' ("VDACS") Office of Charitable and Regulatory Programs ("OCRP"). Id. at ¶¶ 3, 13–16. Huffman is an employee of Powerhouse Gaming, Inc. ("Powerhouse"), one of Grover's competitors. Id. at ¶¶ 8, 25. Grover claims that Huffman made defamatory statements about Grover and engaged in tortious interference with a contract or business expectancy with the Clifton Forge Moose Lodge. Id. at ¶ 26.

In March 2023, after receiving multiple referrals from other Grover clients, the Clifton Forge Moose Lodge approached Grover employee Trish Riley about using Grover's products. Id. at ¶ 19. At that time, the Clifton Forge Moose Lodge had a contract with Powerhouse that was to expire on May 26, 2023. Id. at ¶ 20. These discussions led to Grover, with approval from the Lodge, placing at least five electronic pull tab machines at the Clifton Forge Moose Lodge. Id. at ¶ 22. The Clifton Forge Moose Lodge Board of Directors voted to enter into an agreement with Grover on May 15, 2023, by a vote of seven to one. Id. at ¶ 23. At this point, Grover claims it "had a reasonable expectation and belief that the Clifton Forge Moose membership would follow the board's recommendation." Id. at ¶ 24.

In April 2023, Huffman became aware that the Clifton Forge Moose Lodge might move its business to Grover once its contract with Powerhouse expired. Id. at ¶ 25. On April 15, 2023, Huffman sent a message to a Clifton Forge Moose Lodge representative, stating:

> Looking forward to seeing you folks tomorrow evening. Please don't be BS'd by Grover. They are under a very serious State Investigation in Virginia!!!!! Be careful dealing with Trish Riley!!! She's fully involved!!!

Id. at ¶ 26. Huffman verbally told Clifton Forge Moose Lodge administrator David Furry that Grover was under serious investigation by the Virginia charitable gaming authorities and that the investigation involved payouts from Grover's electronic pull tabs. Id. at ¶ 27.

Grover also claims that Huffman made similar statements to other entities, specifically eleven regional Moose Lodges, the Shenandoah VFW, and the Culpeper Eagles. Id. at ¶ 28.

Grover believes the statements imply "illegal conduct," id. at ¶ 38, as well as "convey the impression that Grover does not operate its business appropriately," "impl[y] that Grover shorts players and charities because it does not provide appropriate payouts," and indicate that

2

"Grover is ripping everyone off," id. at ¶ 31. Grover contends that these statements are false, as neither Grover nor Riley is under investigation by Virginia. Id. at ¶ 32.

On May 15, 2023, Huffman used the defamatory statements to influence the Clifton Forge Moose membership not to do business with Grover. Id. at ¶ 33. Grover was therefore "unable to consummate its business expectancy and sign an agreement with the Clifton Forge Moose." Id. at ¶ 34. Grover contends that but for "Huffman's false and defamatory statements and intentional and tortious interference with Grover's business expectancy . . . Grover would have finalized a contract with the Clifton Forge Moose." Id.

## II. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." Id. at 679; see also Simmons v. United Mortg. & Loan Invest., 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (quotation and emphasis omitted).

A court must consider all well-pleaded allegations in a complaint as true, see Albright v. Oliver, 510 U.S. 266, 268 (1994), and must construe factual allegations in the light most favorable to the plaintiff. See Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005). Nevertheless, a court is not required to accept as true "a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986), conclusory allegations devoid of any reference to actual events, see United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks omitted). "'Thus, in reviewing a motion to dismiss an action pursuant to Rule 12(b)(6), a court must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level.'" Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009)).

### III. Analysis

Grover contends that Huffman is liable under theories of defamation and defamation per se (Count One), as well as tortious interference with a contract or business expectancy (Count Two). Huffman seeks to dismiss both claims against him. Mot. Dismiss, ECF No. 10.

#### A. Defamation and Defamation Per Se

Under Virginia common law, a defamation claim requires the "(1) publication of (2) an actionable statement with (3) the requisite intent." Jordan v. Kollman, 269 Va. 569, 576, 612 S.E.2d 203, 206 (2005). Huffman disputes that Grover has satisfied the second and third

4

requirements and contends that it is immune from liability under Virginia's anti-SLAPP law. Mem. Supp. Mot. Dismiss, ECF No. 11, at 2. The court disagrees.

### 1. Falsity & Defamatory Sting

To be actionable, "the statement must be both false and defamatory." Jordan, 269 Va. at 575, 612 S.E.2d at 206. "[D]efamatory words that are actionable per se" include "those which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished" and "those which prejudice such person in his or her profession or trade." Tronfeld v. Nationwide Mut. Ins. Co., 272 Va. 709, 713, 636 S.E.2d 447, 449–50 (2006) (citing Fleming v. Moore, 221 Va. 884, 889, 275 S.E.2d 632, 635 (1981)).

Huffman argues that (i) the statement that Grover and Riley were under a "very serious state investigation" lacks the requisite falsity and defamatory sting, and (ii) the statements to entities other than the Clifton Forge Moose Lodge are too vague to be actionable.

### i. "Very Serious State Investigation"

Huffman contends that the statement that Grover is "under a very serious State Investigation in Virginia!!!!!" is not actionable. Mem. Supp. Mot. Dismiss, ECF No. 11, at 9. Huffman reaches this conclusion by breaking this statement into two components: (1) that Grover is under a state investigation and (2) that the investigation is "very serious." Id. Huffman claims that the first component lacks the requisite defamatory sting, as simply being "under investigation" does not mean that one did anything wrong, and the second component is nonactionable opinion. Id. Huffman's arguments are unconvincing.

5

"Whether an alleged defamatory statement is one of fact or opinion is a question of law and is, therefore, properly decided by the court instead of a jury." Tronfeld, 272 Va. at 714, 636 S.E.2d at 450 (citing Fuste v. Riverside Healthcare Ass'n, 265 Va. 127, 132–33, 575 S.E.2d 858, 861 (2003)). "In determining whether a statement is one of fact or opinion, a court may not isolate one portion of the statement at issue from another portion of the statement." Hyland v. Raytheon Tech. Servs. Co., 277 Va. 40, 48, 670 S.E.2d 746, 751 (2009). Instead, "a court must consider the statement as a whole." Id. As "defamatory statements may be made by implication, inference, or insinuation[,]" "the factual portions of an allegedly defamatory statement may not be evaluated for truth or falsity in isolation, but must be considered in view of any accompanying opinion and other stated facts." Id.; see also Schaecher v. Bouffault, 290 Va. 83, 101, 772 S.E.2d 589, 599 (2015) (holding that "[a]s with all evaluations of defamatory statements, however, context is of the utmost importance"); Yeagle v. Collegiate Times, 255 Va. 293, 297–98, 497 S.E.2d 136, 138 (1998) (upholding dismissal of claim after "considering the phrase at issue in the context of the entire article").

Therefore, the court declines to separate the statement into component parts as it considers whether it is actionable. The message Huffman sent to the Clifton Forge Moose Lodge reads, in its entirety:

> Looking forward to seeing you folks tomorrow evening. Please don't be BS'd by Grover. They are under a very serious State Investigation in Virginia!!!!! Be careful dealing with Trish Riley!!! She's fully involved!!!

Compl., ECF No. 1, at ¶ 26 (emphasis added to challenged statement).

While it is well-established that expressions of opinion are generally protected by the First Amendment, determining whether a given statement is opinion or fact "presents

6

oftentimes nettlesome problems . . . as the evanescent distinction may be hazy at times." Carto v. Buckley, 649 F. Supp. 502, 506 (S.D.N.Y. 1986). In Milkovich v. Lorain Journal Co., 497 U.S. 1, 20–21 (1990), the Supreme Court held that although there is no "separate constitutional privilege for 'opinion,'" a statement is constitutionally protected if it "does not contain a provably false factual connotation." In determining whether a statement can be reasonably interpreted as declaring or implying a falsehood or containing a "provably false connotation," the Fourth Circuit has adopted the "thoughtfully elaborated" four-factor test from Ollman v. Evans, 750 F.2d 970 (D.C. Cir 1984), cert. denied, 471 U.S. 1127 (1985). See Potomac Valve & Fitting Inc. v. Crawford Fitting Co., 829 F.2d 1280, 1288–89 (4th Cir. 1987). These factors include: (1) the author or speaker's choice of words; (2) whether the challenged statement is capable of being objectively characterized as true or false; (3) the context of the challenged statement within the writing or speech as a whole; and (4) the broader social context into which the statement fits.[1] See Hanks v. WAVY Broad., LLC, No. 2:11CV439, 2012 WL 405065, at *9 (E.D. Va. Feb. 8, 2012) (citations omitted). The second factor is a minimum threshold issue that all plaintiffs must meet to sustain a cause of action: if words cannot be described as true or false, they are not actionable. Id. (citing Potomac Valve, 829 F.2d at 1287–88); see also Biospherics, Inc. v. Forbes, Inc., 151 F.3d 180, 184 (4th Cir. 1998) (recognizing

---

[1] Though not explicitly endorsed in Milkovich, this four-factor test provides a framework for conducting essentially the same analysis using nearly identical indicia to distinguish between opinion and fact. See Milkovich, 497 U.S. at 24 (J., Brennan, dissenting). Indeed, the Fourth Circuit, although noting that Milkovich declined to explicitly adopt the Ollman framework, appears to approve the use by lower courts of its four-factor test in framing their analyses. See, e.g., PBM Prod., LLC v. Mead Johnson Nutrition Co., 678 F. Supp. 2d 390, 401 (E.D. Va. 2009), aff'd sub nom. PBM Prod., LLC v. Mead Johnson & Co., 639 F.3d 111 (4th Cir. 2011).

that Milkovich, like Potomac Valve, placed "primary emphasis . . . on verifiability of the statement").

The Fourth Circuit makes clear that to appropriately construe a statement in light of what might reasonably have been understood therefrom, it is incumbent upon courts to look not just at the allegedly defamatory words themselves, but also at the context and general tenor of the message. See Snyder v. Phelps, 580 F.3d 206, 219 (4th Cir. 2009), aff'd, 562 U.S. 443 (2011); Biospherics, 151 F.3d at 184. This imperative derives from the court's "oblig[ation] to assess how an objective, reasonable reader would understand a challenged statement . . . ." Id. Applying the Ollman factors, and drawing all reasonable inferences in favor of Grover, the court concludes that an objective, reasonable reader of this message could understand the challenged language as including (an allegedly false) statement of fact with the requisite defamatory sting.

Viewing the allegations in the light most favorable to the plaintiff, the plain language of the challenged statement—that Grover is "under a very serious State Investigation in Virginia!!!!!"—is verifiable, even if confirming the existence of an investigation may require significant legwork. Either an investigation by the state exists, or it does not.

The context of the message is important, as it both (1) supports Grover's contention that a reasonable recipient would understand the challenged statement as stating a fact, and (2) reinforces the implication that Grover has engaged in illegal conduct related to charitable gaming. Huffman, unlike the recipient of the message, is an industry insider; a recipient of this message could reasonably perceive Huffman as having knowledge about ongoing investigations in the charitable gaming world. Huffman exhorts the message recipient not to

8

"be BS'd" by Grover, includes five exclamation points after the challenged statement, and warns the recipient to "be careful" in dealing with Grover's representative. Given the content and tenor of Huffman's language, a recipient of this message could reasonably infer that the conduct under investigation relates to illegal conduct in Grover's dealings with clients. This implication produces the defamatory sting and prejudices Grover in its trade.

Several other courts evaluating Virginia law have similarly held that falsely stating that an entity is "under investigation" is actionable defamation.

In Goulmamine v. CVS Pharmacy, Inc., 138 F. Supp. 3d 652 (E.D. Va. 2015), a physician sued CVS for defamation after CVS employees refused to fill certain prescriptions ordered by Goulmamine and provided various explanations for this decision to patients. Two categories of statements Goulmamine challenged as defamatory are relevant here. First, Goulmamine alleged that CVS employees had made "factual (and incorrect)" statements "relating to Goulmamine's standing in relationship to regulatory bodies: statements that the [Drug Enforcement Agency (DEA)], [Federal Bureau of Investigation (FBI)], or Board of Medicine was investigating Goulmamine or had revoked his license." Id. at 657. Second, Goulmamine claimed that CVS employees had made "potentially misleading statements of fact" that Goulmamine was "being investigated" or "audited" or "under review," that left "the identity of the investigator ambiguous, but in context, it is reasonable that a patient might believe the investigator to be a regulatory or oversight body, rather than CVS." Id. In evaluating CVS's motion to dismiss, the court held that Goulmamine had stated a defamation per se claim against CVS.

> Drawing all reasonable inferences in [Goulmamine's] favor, it is plausible that a patient who heard "CVS is not filling

9

> Goulmamine's prescriptions anymore. Goulmamine is being investigated" would believe the investigation was being performed by an entity other than CVS. As such, it is plausible that a listener would infer a false fact (investigation by a regulatory agency) rather than a true fact (investigation by CVS). This conclusion is bolstered by the Fourth Circuit "general rule of interpretation . . . that 'allegedly defamatory words are to be taken in their plain and natural meaning . . . courts applying Virginia defamation law should consider not only the words themselves but also the inferences fairly attributable to them.'" [Hatfill v. New York Times Co., 416 F.3d 320, 331 (4th Cir. 2005)] (internal quotations omitted).

Id. at 660–61 (emphasis in original). Like the patients in Goulamine, the recipient of Huffman's message could reasonably infer a false fact: the existence of an investigation.

Likewise, in Mann v. Heckler & Koch Def., Inc., 639 F. Supp. 2d 619, 624 (E.D. Va. 2009), the plaintiff alerted the defendant, his employer, to potential wrongdoing by his colleagues. In response, the defendant-employer began an investigation and placed Mann on administrative leave. Mann himself was not under investigation and had played no role in the events under investigation before blowing the whistle. Id. at 624–25. The defendant-employer sent an email to several staff members stating that Mann "ha[d] been placed on administrative leave . . . pending an internal investigation." Id. at 625. The court held that the "email, along with the 'inferences fairly attributable' thereto, could be fairly determined to be a false statement" that "Mann was the subject of the pending investigation," rather than its instigator. Id. at 635.[2]

---

[2] Unlike Huffman, neither defendant in Goulmamine or Mann directly argued that being "under investigation" is an opinion rather than a factual statement. The defendants in both cases implicitly conceded that these statements were factual, instead arguing that the statements were substantially true. This trend holds outside of Virginia, where other courts have permitted defamation actions to proceed based on statements that an entity is being investigated. See, e.g., Mimms v. CVS Pharmacy, Inc., No. 1:15-CV-00970-TWP, 2015 WL 6449293 (S.D. Ind. Oct. 22, 2015) (holding that the plaintiff stated a claim for defamation by alleging that the defendant-pharmacy told patients that the plaintiff was "under DEA investigation"); AMI Affiliates, Inc. v. U.S. of Hous.

10

Huffman relies primarily on Owens v. DRS Auto. Fantomworks, Inc., 87 Va. Cir. 30 (2013), to argue that saying that someone is "under investigation" is non-actionable opinion. Suppl. Mem. Supp. Mot. Dismiss, ECF No. 19, at 3. Mr. and Ms. Owens contracted with the defendants to modify a car. Owens, 87 Va. Cir. at *1. The defendants purchased a car for parts from a non-party, Alexander Thiess, from which they intended to salvage parts for use in the project. Id. The business relationship soured and the Owens's, for opaque reasons, took issue with the defendants's purchase of the car from Thiess. After the Owens filed suit, the defendants filed an amended counterclaim alleging that Ms. Owens contacted Thiess's military superiors and made several defamatory statements, including that the defendants and Thiess were under criminal and civil investigation. Id.; see also Am. Countercl. at ¶¶ 9–10, Owens v. DRS Auto. Fantomworks, Inc., No. CL12-7354 (Va. Cir. Apr. 9, 2013). The court first determined that the allegedly defamatory statements were not set out with sufficient specificity. Even if the pleading had met that threshold requirement, the court commented, the statement "involve[d] generalizations that would require the Plaintiffs to define the terms based on their own knowledge, thus making those terms expressions of an opinion." Owens v. DRS Auto. Fantomworks, Inc., 87 Va. Cir. 30, at *3 (2013).

However, Owens arose in a significantly different context than the instant claim. In Owens, it was clear that the plaintiffs had little prior contact with the defendants or Thiess and had limited knowledge of the transaction between them. 87 Va. Cir. at *1. The challenged

---

& Urb. Dev., No. CIV. A. 94-CV-7194, 1995 WL 752387, at *4 (E.D. Pa. Dec. 15, 1995) ("The Court finds that a statement that someone is under criminal investigation can reasonably be construed as defamatory."); Dallas Morning News, Inc. v. Hall, 579 S.W.3d 370, 377 (Tex. 2019) (affirming that a news article stating that a company was "under investigation" implied that the plaintiff had violated the law).

11

statement in Owens was more akin to "name-calling," see Levine v. Meador, No. 120CV1073TSETCB, 2022 WL 18912678, at *8 (E.D. Va. Mar. 29, 2022), report and recommendation adopted, No. 1:20-CV-1073, 2022 WL 18912217 (E.D. Va. Aug. 18, 2022), and was therefore less likely to be understood as a factual statement. Here, by contrast, Huffman is an insider in the allegedly small but competitive charitable gaming industry who could be perceived as making a statement of fact.

### ii. Unidentified Statements

The complaint alleges that Huffman made defamatory comments to numerous other entities, but does not include quotations or additional information. Huffman argues that these allegations lack the specificity required to state a defamation claim. See Phillips v. Lynchburg Fire Dep't, No. 6:16-CV-00063, 2017 WL 2424715, at *9 (W.D. Va. June 5, 2017) (dismissing claim because "defamation under Virginia law requires proof of the exact defamatory words"). The court agrees that Grover has not plead sufficient facts for independent defamation claims based on these statements, but notes that they provide relevant context.

### 2. Intent

The level of intent require in a defamation action varies based on the status of the plaintiff and the subject matter.

"[I]n defamation actions based on statements regarding matters of public concern, actual malice must be proved before presumed or punitive damages can be awarded." Shenandoah Pub. House, Inc. v. Gunter, 245 Va. 320, 324, 427 S.E.2d 370, 372 (1993) (citing Milkovich, 497 U.S. at 16–17). Similarly, actual malice is required if the plaintiff is a public figure or a limited-purpose public figure. CACI Premier Tech., Inc. v. Rhodes, 536 F.3d 280,

12

293–94 (4th Cir. 2008). "A finding of actual malice requires that the statement be made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" Shenandoah Pub. House, Inc., 245 Va. at 324, 427 S.E.2d at 372 (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 279–80 (1964)). The plaintiff must establish actual malice by clear and convincing evidence. Id. (citing Bose Corp. v. Consumers Union, Inc., 466 U.S. 485, 511 n.30 (1984)).

On the other hand,

> In an action brought by a private individual to recover actual, compensatory damages for a defamatory publication, the plaintiff may recover upon proof by a preponderance of the evidence that the publication was false, and that the defendant either knew it to be false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based.

Gazette, Inc. v. Harris, 229 Va. 1, 15, 325 S.E.2d 713, 725–26 (1985).

Huffman argues that Grover must plead actual malice because (1) the allegedly defamatory statements touch on a matter of public concern, and (2) Grover is either a public figure or a limited-purpose public figure in the context of charitable gaming. Mem. Supp. Mot. Dismiss, ECF No. 11, at 11. The court rejects both arguments.

### i. Public Concern

"Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community." Carey v. Throwe, 957 F.3d 468, 475 (4th Cir. 2020) (citing Urofsky v. Gilmore, 216 F.3d 401, 406 (4th Cir. 2000)). Huffman is correct that the existence of an investigation could be a matter of public concern within the charitable gaming community. However, taking Grover's allegations as true, there was no ongoing state

13

investigation, and therefore could be no public concern. The challenged statement does more than "touch on" an existing matter of public concern, it created the concern out of whole cloth. C.f., Edwards v. Schwartz, 378 F. Supp. 3d 468, 506 (W.D. Va. 2019) (noting that "the allegedly defamatory statements giving rise to this matter are related to an existing public controversy") (emphasis added). Therefore, the challenged statement does not touch on a matter of public concern. A contrary holding would create a safe harbor for entities to propagate false claims about any competitor in a government regulated industry.

The court also rejects Huffman's Anti-SLAPP defense on this basis. Virginia's Anti-SLAPP statute, Va. Code § 8.01-223.2, provides immunity from tort liability in certain circumstances, such as when the claim "is based solely on statements . . . regarding matters of public concern that would be protected under the First Amendment to the Constitution of the United States made by that person that are communicated to a third party." As the challenged statement does not relate to a matter of public concern, the Anti-SLAPP statute does not apply.

### ii. Public Figure or Limited-purpose Public Figure

Grover is neither a public figure nor a limited-purpose public figure. In the Fourth Circuit, courts "proceed upon the initial presumption that the defamation plaintiff is a private individual, subject to the defendant's burden of proving that the plaintiff is a public figure" to whom the actual malice standard applies. Foretich v. Cap. Cities/ABC, Inc., 37 F.3d 1541, 1553 (4th Cir. 1994).

14

As Grover has not achieved "such pervasive fame or notoriety that [it] becomes a public figure for all purposes and in all contexts," <u>Gertz v. Robert Welch, Inc.</u>, 418 U.S. 323, 351 (1974), the contention that Grover is a public figure is without merit.

As relates to limited-purpose public figures, the Fourth Circuit:

> [S]et forth five requirements that the defamation defendant must prove before a court can properly hold that the plaintiff is a public figure for the <u>limited-purpose of comment on a particular public controversy</u>: (1) the plaintiff had access to channels of effective communication; (2) the plaintiff voluntarily assumed a role of special prominence in the public controversy; (3) the plaintiff sought to influence the resolution or outcome of the controversy; (4) the controversy existed prior to the publication of the defamatory statement; and (5) the plaintiff retained public-figure status at the time of the alleged defamation.

<u>Id.</u> (emphasis added). The second and third factors above are combined into what is often considered the dispositive question at the core of the inquiry: "whether the plaintiff had voluntarily assumed a role of special prominence <u>in a public controversy</u> by attempting to influence the outcome." <u>Fitzgerald v. Penthouse Int'l, Ltd.</u>, 691 F.2d 666, 668 (4th Cir. 1982) (emphasis added), <u>cert. denied</u>, 460 U.S. 1024 (1983). As stated above, absent Huffman's allegedly wrongful actions, there was no public controversy about which Grover could be called to comment. Nor could Grover have voluntarily assumed such a role. Therefore, Grover is not a limited-purpose public figure.

### B. Tortious Interference with a Business Expectancy

Grover has plead facts sufficient to state a claim for tortious interference with a business expectancy against Huffman. These elements include: (1) a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination

15

of the relationship or expectancy; and (4) resulting damage to the party whose relationship or expectancy has been disrupted. HCP Laguna Creek CA, LP v. Sunrise Senior Living Mgmt., Inc., 737 F. Supp. 2d 533, 552, (E.D. Va. 2010) (citing Chaves v. Johnson, 230 Va. 112, 119, 335 S.E.2d 97, 102 (1985)).

When alleging interference with a prospective economic advantage, a plaintiff also must demonstrate that the defendant employed "improper methods," Commerce Funding Corp. v. Worldwide Sec. Services Corp., 249 F.3d 204, 214 (4th Cir. 2001), such as defamation, Duggin v. Adams, 234 Va. 221, 227, 360 S.E.2d 832, 836 (1978).

First, Grover alleges that he had a business expectancy. "The evidence of a business expectancy must be between identified parties and based upon something that is a concrete move in the direction of fulfilling the expectancy." Carfax, Inc. v. Red Mountain Techs., 119 F. Supp. 3d 404, 416 (E.D. Va. 2015) (inferring as plausible a business expectancy from "negotiations between two parties includ[ing] indication of a 'delay' implementing the subject of negotiations"). Grover identifies the business expectancy with the Clifton Forge Moose Lodge. The Board's 7-1 affirmative vote to enter into a contract with Grover provides the requisite concrete step toward fulfilling the expectancy.

Second, Grover alleges that Huffman was aware that the Clifton Forge Moose Lodge was considering choosing Grover over a continued arrangement with Powerhouse.

Third, Grover alleges that Huffman's improper conduct was intentional interference that resulted in the termination of the business expectancy between Grover and the Clifton Forge Moose Lodge. The improper conduct took the form of a defamatory message to a representative of the Clifton Forge Moose Lodge, warning the recipient to be wary of Riley

and that Grover was subject to a very serious state investigation. Grover states that Huffman used these "false and defamatory statements . . . to influence the membership of the Clifton Forge Moose Lodge not to do business with Grover, after the Board [had] . . . overwhelmingly voted in favor of doing business with Grover." Huffman, ECF No. 1, at ¶ 33. Grover claims that "but for" Huffman's improper conduct, "Grover would have finalized a contract with the Clifton Forge Moose and been permitted to place its products at that location." Id. at ¶ 34.

Finally, Grover claims that it suffered damages in the form of the lost business opportunity with the Clifton Forge Moose Lodge.

## IV. Conclusion

For the foregoing reasons, Huffman's Motion to Dismiss, ECF No. 10, is **DENIED**.

It is **SO ORDERED**.

Entered: 12/21/2023

Michael F. Urbanski
Chief U.S. District Judge
2023.12.21 16:38:07 -05'00'

Michael F. Urbanski
Chief United States District Judge

17